IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SURESH MALLELA, | : | |
| | : | Civil Action No. 2:19-cv-01658 |
| Plaintiff, | : | |
| | : | |
| v. | : | The Honorable J. Nicholas Ranjan |
| | : | |
| COGENT INFOTECH CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS
COUNTS I, IV, AND V OF PLAINTIFF'S COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Cogent Infotech Corp. ("Cogent"), by and through its attorneys, Maiello, Brungo, and Maiello, LLP, hereby files this Brief in Support of its Partial Motion to Dismiss Counts I, IV, and V of Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

## I.     FACTUAL BACKGROUND

On December 20, 2019, Plaintiff Suresh Mallela ("Plaintiff" or "Mallela"), initiated this action by filing a Complaint ("Plaintiff's Complaint") in the United States District Court for the Western District of Pennsylvania.  (See Doc. No. 1).  Plaintiff's Complaint alleges he was "lured" into employment with Cogent as a technology professional with "promises of long-term work, large salaries, health insurance and other benefits." (Id. at

¶3).  Plaintiff further alleges Cogent promised him assistance in obtaining a Permanent Residency Card (a "Green Card").  (Id.).

Plaintiff's Complaint specifically alleges that Cogent hired Plaintiff at an hourly rate of Sixty Dollars ($60.00) per hour and, further, provided benefits such as "health insurance and paid time off." (Id. at ¶29).  Plaintiff began working for Cogent in December, 2017 and ceased working for Cogent on April 30, 2019, a period of seventeen (17) months. (Id. at ¶31).  Other than Plaintiff's claim that Cogent purportedly offered to assist Plaintiff in obtaining a Green Card, Plaintiff's sole employment-related claim against Cogent is that Cogent allegedly failed to pay Plaintiff's wages for one (1) of the seventeen (17) months Plaintiff worked for Cogent.  (Id. at ¶33).  Notably, Plaintiff alleges that Cogent failed to pay his wages for April, 2019, the last month Plaintiff worked for Cogent.  (Id.).

Plaintiff's Complaint contains six (6) causes of action against Cogent: (1) a purported violation of the Trafficking Victims Protection Act of 2000 and Trafficking Victims Reauthorization Act of 2003 (the "Trafficking Act"); (2) a purported violation of the Fair Labor Standards Act; (3) an alleged violation of the Pennsylvania Wage Payment and Collection Law; (4) an alleged claim of Intentional Infliction of Emotional Distress; (5) an alleged claim of Negligent Infliction of Emotional Distress; and (6) an alleged claim of Breach of Contract.  (Id. at ¶¶37-69).  Plaintiff requests damages for compensatory damages, attorneys' fees, and punitive damages.  (Id. at Prayer for Relief).

## II.    STANDARD OF REVIEW

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law."  Gould Elecs.,

Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  In Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Id. at 555.

Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S.

662 (2009), subsequently defined a two-pronged approach to a court's review of a motion

to dismiss. "First, the tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical,

code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions." Id. at 678-79.  Second, the Supreme

Court emphasized that "only a complaint that states a plausible claim for relief survives a

motion to dismiss." Id. at 679.

## IV.    ARGUMENT

**A.    Count I of Plaintiff's Complaint Fails to Set Forth a Viable Claim Against Cogent Under the Trafficking Victims Protection Act of 2000 and the Trafficking Victims Reauthorization Act of 2003.**

Count I of Plaintiff's Complaint asserts a claim for a violation of the Trafficking

Act.  Within Count I, Plaintiff alleges that Defendant violated four (4) specific sections of

the Trafficking Act, specifically: 1. 18 U.S.C. §1589 – Forced Labor; 2. 18 U.S.C. §1590

– Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor;

3. 18 U.S.C. §1592 - Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor; and 4. 18 U.S.C. §1597 - Unlawful Conduct With Respect to Immigration Documents.  The averments of Plaintiff's Complaint, even if accepted as true, cannot support a claim under any of these Sections of the Trafficking Act.

1. **18 U.S.C. §1589 – Forced Labor**

Section 18 U.S.C. §1589 provides, in pertinent part:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

(c) In this section:

(1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose

310364,13014.11

for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

See 18 U.S.C. §1589.

As a threshold matter, "[t]he [Trafficking Act] is an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking." Aguilera v. Aegis Communications Group, LLC, 72 F.Supp. 3d 975, 978 (W.D. Mo. 2014). "The purpose of the [Trafficking Act] is to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers." Id. "Many of the victims are trafficked into the international sex trade, often by force, fraud or coercion." Id. (citing Nunag–Tanedo v. East Baton Rouge Parish School Board, 790 F.Supp.2d 1134, 1143 (C.D. Cal. 2011)).

In an effort to combat these practices, the Act provides victims with the right to assert s claim under Section 1598 if they are coerced or forced to perform work or provide service as a result of physical force, physical restraint, serious harm or abuse. 18 U.S.C. §1589. Recognizing that all coercion is not physical, the Act also provides victims with the right to assert  claim if they are mentally coerced to perform work  through threats of force, threats of physical restraint, threats of serious harm to that person or another person, or by

means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. Id.

The Act also recognizes that victims can be coerced into performing work through abuse of law or threatened abuse of the legal process. Id.  Although the Federal Courts have not established a bright-line rule as to what exactly constitutes the type of "abuse of legal process" that is sufficient to support a claim under Section 1598, |several Courts have held that threats of deportation could amount to an abuse of process and support a claim under Section 1598.   See Adia v. Granduer Management, Inc., 933 F.3d 89, 93 (2d Cir. 2019)(Finding that that employer's representation to an employee that "[employer] would cancel or withdraw his immigration sponsorship if he left them or would be difficult to them regarding his work", could constitute an abuse of legal process under Section 1589(a)(3))Joseph v. Signal International, LLC, 2015 WL 1262286, *7 (E.D. Texas, March 17, 2015)(citing Kiwanuka v. Bakilana, 844 F.Supp.2d 107, 115 (D. D.C. 2012))(Finding that "threats of deportation constitute a condition of servitude induced through abuse of the legal process").

However, as the Ninth Circuit noted in Aguilera v. Aegis Communications Group, LLC, (when discussing the application of the TVPA), "[n]*ot all bad employer-employee relationships will constitute forced labor."*  72 F.Supp.3d at 978 (citing U.S. v. Dann, 652 F.3d 1160, 1169 (9th Cir.2011))(emphasis added).  Moreover, the Court have held that warnings regarding the potential consequences of an immigrant's decision to leave the employer of his or her sponsoring employer  is not "serious harm"—and warning of such a consequence is not a "threat"—under the Trafficking Victims Protection Act. See

Headley v. Church of Scientology Int'l, 687 F.3d 1173, 1180 (9th Cir. 2012)(recognizing that warnings that immigrant employee could have been declared "suppressive persons" and thus potentially to have lost contact with family, friends if they left their position held not to constitute violation of Act); Muchira v. Al-Rawaf, 850 F.3d 605, 624 (4th Cir. 2017)(Recognizing warnings of adverse but legitimate consequences do not amount to coercion that will support claim under abuse of process provisions in Section 1598 of the Act). As a consequence, as the Third Circuit noted in Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 540 (3d Cir. 2012), "[a]bsent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude."  Thus, as the Court noted in Muchira v. Al-Rawaf when "applying the Act, we must distinguish between '[ ]improper threats or coercion and permissible warnings of adverse but legitimate consequences.' " , 850 F.3d at 624, *citing to* Headley, 687 F.3d at 1180 (quoting Bradley, 390 F.3d at 151).

The cases also conclusively demonstrate that the operative factor is the *intentional compulsion of services*. See United States v. Kozminski, 487 U.S. 931, 953, 108 S. Ct. 2751, 2765, 101 L. Ed. 2d 788 (1988)(Finding that  "*[c]ompulsion of services by the use or threatened use of physical or legal coercion* is a necessary incident of a condition of involuntary servitude" or to establish a violation of the Act.); Muchira v. Al-Rawaf, 850 F.3d 605, 618 (4th Cir. 2017)(Finding that to establish a claim under Section 1589 "[t]here must be evidence from which the jury could find "that the employer *intended* to cause the victim to believe that she would suffer serious harm … if she did not continue to work."). They show that the linchpin of the serious harm analysis under §1589 is not just that serious harm was threatened but that *the employer intended the victim to believe that such harm would befall her"* if she left her employment." .); Muchira v. Al-Rawaf, 850 F.3d at 618

(emphasis added). Thus, a plaintiff, seeking to assert a claim under Section 1589, must establish that the defendant employer *intended* for the use physical force, threats, abuse of process or some other form of mental coercion to cause the plaintiff to reasonably believe that he or she had a choice but to perform the work. Id.

The Supreme Court's decision in United States v. Kozminski, supra, clearly illustrates this point.  In Kozminski, the federal government brought claims against two farm owners under the criminal portion of the Trafficking Act, after two mentally retarded men were found laboring on respondents' farm in poor health, in squalid conditions.  The farm owners were convicted at trial for violating the Act.  However, Third Circuit overturned the conviction, finding that the trial court applied an overly broad interpretation of involuntary servitude.  On appeal to the Supreme Court, the government argued that the Third Circuit was incorrect, contending that broad interpretation of involuntary servitude should be adopted by the Supreme Court based on the subjective point of view of the victim.  The Supreme Court, however, rejected this argument, demonstrating that operative factor was the intent of the employer to coerce the victim, when it noted:

> The Government has argued that we should adopt a broad construction of "involuntary servitude," which would prohibit the compulsion of services by any means that, from the victim's point of view, either leaves the victim with no tolerable alternative but to serve the defendant or deprives the victim of the power of choice. Under this interpretation, involuntary servitude would include compulsion through psychological coercion as well as almost any other type of speech or conduct intentionally employed to persuade a reluctant person to work.
>
> This interpretation would appear to criminalize a broad range of day-to-day activity. For example, the Government conceded at oral argument that, under its interpretation, … §

1584 could be used to punish a parent who coerced an adult son or daughter into working in the family business by threatening withdrawal of affection. It has also been suggested that the Government's construction would cover a political leader who uses charisma to induce others to work without pay or a religious leader who obtains personal services by means of religious indoctrination. As these hypotheticals suggest, the Government's interpretation would delegate to prosecutors and juries the inherently legislative task of determining what type of coercive activities are so morally reprehensible that they should be punished as crimes. It would also subject individuals to the risk of arbitrary or discriminatory prosecution and conviction.

Moreover, as the Government would interpret the statutes, the type of coercion prohibited would depend entirely upon the victim's state of mind. Under such a view, the statutes would provide almost no objective indication of the conduct or condition they prohibit, and thus would fail to provide fair notice to ordinary people who are required to conform their conduct to the law. The Government argues that any such difficulties are eliminated by a requirement that the defendant harbor a specific intent to hold the victim in involuntary servitude. But in light of the Government's failure to give any objective content to its construction of the phrase "involuntary servitude," this specific intent requirement amounts to little more than an assurance that the defendant sought to do "an unknowable something."

*          *          *

[W]e conclude that Congress did not intend § 1584 to encompass the broad and undefined concept of involuntary servitude urged upon us by the Government.

*          *          *

Absent change by Congress, we hold that, for purposes of criminal prosecution under … §1584, the term "involuntary servitude" necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process. This definition encompasses those cases in which the defendant holds the victim in servitude by placing the victim

in fear of such physical restraint or injury or legal coercion. Our holding does not imply that evidence of other means of coercion, or of poor working conditions, or of the victim's special vulnerabilities is irrelevant in a prosecution under these statutes. As we have indicated, the vulnerabilities of the victim are relevant in determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve. In addition, a trial court could properly find that evidence of other means of coercion or of extremely poor working conditions is relevant to corroborate disputed evidence regarding the use or threatened use of physical or legal coercion, the defendant's intention in using such means, or the causal effect of such conduct. We hold only that the jury must be instructed that *compulsion of services by the use or threatened use of physical or legal coercion is a necessary incident of a condition of involuntary servitude*.

487 U.S. at 946–53, 108 S. Ct. at 2762–65 (emphasis added).

The recent decision in  Muchira v. Al-Rawaf, 850 F.3d 605 (4th Cir. 2017), is equally instructive. In Muchira, a Kenyan national, who was employed as a housemaid for a Saudi family in the United States filed a lawsuit, alleging that she was a victim of "forced labor" in violation of 18 U.S.C. § 1589. After the trial court dismissed her claims, Muchira filed an appeal contending that she had presented sufficient evidence upon which a jury could find that the Saudi family knowingly obtained her labor and services "by means of serious harm," in violation of § 1589(a)(2), and "by means of the abuse or threatened abuse of law or legal process," in violation of § 1589(a)(3). The Fourth Circuit, however, disagreed, finding that Muchira's evidence was insufficient to satisfy the requirements of the forced labor when it found that:

Muchira misapprehends the scope of the forced labor statute. "[N]ot all bad employer-employee relationships or even bad employer-immigrant ... relationships will constitute forced labor." And Muchira cannot establish a forced labor claim by presenting evidence that her employment environment

310364,13014.11

caused her to experience psychological harm. Rather, *Muchira must present sufficient evidence upon which a jury could reasonably conclude that the Saudi family knowingly or intentionally engaged in actions or made threats that were sufficiently serious to compel a reasonable person in Muchira's position to remain in the Saudi family's employ, against her will and in order to avoid such threats of harm, when she otherwise would have left.* She has failed to do so. The record does not suggest that the Saudi family knowingly forced Muchira to provide her labor or services by means of serious harm or threats of serious harm, that she continued to labor in order to avoid physical or psychological harm, or that the conditions of her employment were such that she reasonably believed that she had no viable "exit option."

\*          \*          \*

[E]ven if there were sufficient evidence upon which a jury could conclude that the "house rules" and other employment conditions were "sufficiently serious" to cause Muchira to reasonably believe that she could not terminate her employment and return to Kenya, *there is no evidence that the Saudi family knowingly subjected Muchira to those conditions as a means to coerce her into staying when she otherwise would have left.* According to Muchira's own testimony, the Saudi family asked her if she would like to continue to work for the family in the United States, while she was in Kenya and outside of their control, and they employed no means of force or threats to bring her here. They never discussed the continued applicability of the cultural rules in the United States, and Muchira never asked to return to Saudi Arabia or Kenya. In short, the employment relationship was for the most part unchanged from what it had been in Saudi Arabia, both from the standpoint of the Saudi family and Muchira.

Accordingly, we agree that Muchira failed to present sufficient evidence to demonstrate that the Saudi family knowingly coerced her into providing labor and services for them in the United States by subjecting her to harm "that [was] sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances [as Muchira] to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c).

We likewise reject Muchira's claims that she has presented sufficient evidence that the Saudi family knowingly coerced her into providing her labor and services by "by means of the abuse or threatened abuse of law or legal process."

\*          \*          \*

Again, Muchira misapprehends the statutory requirements of the TVPA. The term " 'abuse or threatened abuse of law or legal process,' means the use or threatened use of a law or legal process ... in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *It requires more than evidence that a defendant violated other laws of this country or encouraged others to do the same. It requires proof that the defendant "knowingly" abused the law or legal process as a means to coerce the victim to provide labor or services against her will.*

850 F.3d at 620–23 (emphasis added)

The reasoning of the Court in <u>Kozminski</u>, <u>supra</u>, and <u>Muchira v. Al-Rawaf</u>, <u>supra</u>, demonstrates beyond question that the intent of the employer to coerce the employee to take or remain in the position is a requirement to assert a claim of involuntary servitude under the Act.

The Courts also recognize that an alleged victim's claim or belief that he was coerced into involuntary servitude must be reasonable. <u>See</u> <u>Zavala v. Wal Mart Stores Inc.</u>, 691 F.3d at 540–41 (Finding that immigrant workers could not assert for involuntary servitude or use claim under Trafficking Act as predicate for RICO claim, because evidence showed that workers has ability to switch jobs and freely moved between employers); <u>Aguilera v. Aegis Commc'ns Grp., LLC</u>, 72 F.Supp.3d at 978 (Recognizing that to assert claim under Section 1589 of Trafficking Act "[t]he threat considered from the vantage point of a reasonable person in the place of the victim must be sufficiently serious

310364,13014.11

to compel the person to remain."); <u>Muchira v. Al-Rawaf</u>, 850 F.3d at 618 ("The harm or threat of harm, "considered from the vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to compel that person to remain" in her condition of servitude when she otherwise would have left."); <u>Velez v. Sanchez</u>, 754 F. Supp. 2d 488, 498 (E.D.N.Y. 2010)(Finding that plaintiff failed to state claim under Section 1598, because a reasonable jury could not conclude that Velez faced a threat of force or serious harm if she attempted to leave due to her own admissions that she never feared physical harm from either Betsy or Shari and  because her own testimony demonstrates that she did not feel forced to work because of threats of deportation and instead  made a voluntary choice to stay to make a life for herself in the United States).  As a result, an employee cannot assert a claim under the Act or allege involuntary servitude if the employee knows or understands that he or she has a choice and can voluntarily quit or leave. <u>Id.</u>

The Third Circuit's decision in <u>Zavala v. Wal Mart Stores Inc.</u>, <u>supra</u>, provides a perfect example of this principle.  In <u>Zavala</u>, <u>supra</u>, illegal immigrants who took jobs with contractors and subcontractors of Wal–Mart engaged to clean its stores brought claims under RICO against Wal Mart, contending that alleged violations of the Trafficking Act based on claims of involuntary servitude constituted the predicate acts that allowed them to assert the RICO claims against Walmart.  The Third Circuit, however, rejected this argument and affirmed the trial court decision, which dismissed these claims, finding that the workers could not assert claims under RICO through the Trafficking Act based of involuntary servitude, when it held:

> To the extent Plaintiffs allege that they were threatened with deportation, those allegations are likewise insufficient to constitute involuntary servitude. In <u>United States v. Kozminski</u>, the Supreme Court observed that it was

"possible" that threatening an immigrant with deportation might amount to a "threat of legal coercion" resulting in involuntary servitude. At the same time, the Court endorsed Judge Friendly's observation in <u>United States v. Shackney</u>, 333 F.2d 475 (2d Cir.1964): "The most ardent believer in civil rights legislation might not think that cause would be advanced by permitting the awful machinery of the criminal law to be brought into play whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful.". In <u>Shackney</u>, the Second Circuit further held:

> [W]e see no basis for concluding that because the statute can be satisfied by a credible threat of imprisonment, it should also be considered satisfied by a threat to have the employee sent back to the country of his origin, at least absent circumstances which would make such deportation equivalent to imprisonment or worse.... [A] holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, ... *not a situation where the servant knows he has a choice between continued service and freedom*, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad.... While a credible threat of deportation may come close to the line, it still leaves the employee with a choice, and we do not see how we could fairly bring it within § 1584 without encompassing other types of threat.

We agree with Judge Friendly's analysis. Absent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude.

Plaintiffs do not claim that they were compelled to come to work each day. While they allege that managers often kept them beyond the end of their shift to finish their work, they do not claim that they were forced to remain once that work was finished. The record demonstrates that Plaintiffs often switched jobs, freely moving to different employers in different cities. Plaintiffs do not allege that previous employers ever pursued them to compel their return to a previous position. And while a broad reading of Plaintiffs'

> allegations could lead to the conclusion that they were
> threatened with deportation for refusing to work, that is
> legally insufficient to constitute involuntary servitude.

691 F.3d at 540–41.

The application of these principles to the Plaintiff's claim under Section 1598 of the Act, likewise, compels the dismissal of this portion his claim/Complaint. Indeed, Plaintiff's Complaint is utterly devoid of any allegations of Cogent intentionally threatening Plaintiff or otherwise intentionally coercing him to remain in Cogent's employ. (See Doc. No. 1, generally).  Plaintiff's only allegations of wrongdoing against Cogent involve Cogent's purported lackadaisical approach to helping Plaintiff obtain a Green Card and Cogent's supposed failure to pay Plaintiff for a month of work. (See Doc. No. 1 at ¶¶3, 30, 32, 33).  The averments of Plaintiff's Complaint establish no connection between these actions and Plaintiff's decision to remain in his position or that any way establish that that was the intended effect of Defendant's conduct.

There is no allegation that demonstrates or alleges how Defendant's action forced Plaintiff to remain employed by Defendant or that otherwise suggest that the actions of the Defendant forced him to reasonably believe that he had no choice other than to remain in this job. In fact, Plaintiff's own allegations demonstrate that he left Defendant's employment voluntarily after April 30, 2019 (See Complaint, ¶31).

Plaintiff's Complaint is also devoid of any allegation that Cogent abused the legal process or threatened his immigration status, beyond a conclusory statement that Cogent unlawfully retaliated against Plaintiff by withholding pay, due to Plaintiff's purported complaints of illegal treatment, thus jeopardizing Plaintiff's visa status.  (See Plaintiff's Complaint at ¶35(d)).  It is unknown how an alleged withholding of a month's pay could

jeopardize one's immigration status, other than possibly making it harder for the applicant/immigrant to pay counsel or filing fees. Such a connection, however, is tenuous at best as Plaintiff admittedly was paid a considerable amount of wages for the year and a half period before April of 2019 or otherwise cause him to remain employed with Defendant. Although Plaintiff alleges that Cogent failed to provide assistance to Plaintiff in obtaining a Green Card, Plaintiff fails to allege that Cogent's inaction was designed to coerce him to remain in Cogent's employ against his will. To the contrary, the allegations in Plaintiff's own complaint demonstrate that he was well-compensated for his services by receiving a high hourly wage and fringe benefits. Such an arrangement implies a traditional employee-employer relationship rather than the type of coercive behavior which the Trafficking Act was designed to address. Accordingly, Plaintiff's claims under Section 1598 should be dismissed.

**2. 18 U.S.C. §1590 – Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor.**

Plaintiff's Complaint also does not state a claim under Section 1590 of the Trafficking Act. Section 18 U.S.C.A. §1590 provides, in pertinent part:

> (a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

See 18 U.S.C.A. §1590.

As discussed in the case of <u>Martinez-Rodriguez v. Giles</u>, 391 F.Supp. 3d 985, 999 (D. Idaho 2019), "[a]s a threshold matter, a §1590 claim depends on a predicate [Trafficking Act] offense—such as forced labor." <u>Id</u>. (<u>citing</u> <u>Lagayan v. Oden</u>, 199 F. Supp. 3d 21, 29 (D.C.C. 2016)).   If the underlying activity is not a violation of the Trafficking Act, the action cannot support a claim under Section 1590. <u>Id.</u>

In addition, mere disagreements regarding job duties or employment obligations do not rise to the level of predicate offenses and therefore will not support a claim under Section 1590 of the Act. <u>Martinez-Rodriguez v. Giles</u>, 391 F.Supp. 3d at 1000. For example, in <u>Martinez-Rodriguez</u>, a group of professional veterinarians sued an employer under Section 1590 of the Trafficking Act claiming that the employer engaged in a conspiracy to bring the veterinarians to the United States for the purpose of forced labor. The District Court, however, disagreed, finding that the veterinarians' claims under Section 1590 were not sustainable as there was no underlying violation of Section 1589 when it held:

> [T]he Court has weighed all of the facts and—even accepting Plaintiffs' version as true (as is the Court's duty at summary judgment)—the testimony and evidence does not amount to either forced labor or trafficking under the [Trafficking Act]. At the least, the issues raised are disagreements about job duties, employment obligations, or expectations, and at the very most they are employment, contract, or discrimination claims,[fn 7] but none of the testimony rises to the level of federal trafficking or forced labor.
>
>> [fn 7] Said differently, there are clearly disagreements in this case—potentially even material disputes—concerning whether or not Defendants fulfilled their promises in regard to work duties, working conditions, or job compensation; however, none of these arguments are relevant to the claims of forced labor or trafficking (or if they are

> related, it is only secondary). The question at issue in these federal [Trafficking Act] claims is whether Defendants knowingly obtained and kept Plaintiffs employed through illegal means. The Court does not find sufficient evidence (and no dispute as to any evidence) to support such a finding.

391 F. Supp. 3d 985, 1000 (D. Idaho 2019)

Similarly, the claims asserted by Plaintiff are more akin to employment and contractual disputes, which do not rise to an actionable claim for a violation of the forced labor statute.  As a result, this Court, like the Court in <u>Martinez-Rodriguez v. Giles</u>, <u>supra</u>, should find that they do not establish a cognizable forced labor claim, and dismiss Plaintiff's claim under this Section of the Act.

### 3. 18 U.S.C. §1592 - Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor.

Section 18 U.S.C. §1592 provides in pertinent part:

> (a) Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person—
>
> > (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a);
> >
> > (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or
> >
> > (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000,
>
> shall be fined under this title or imprisoned for not more than 5 years, or both.

See 18 U.S.C. §1592.

However, as with other claims under the Trafficking Act, in order to establish a claim under Section 1592, a plaintiff must prove intent or specifically that the destruction, concealment, confiscation of possession of his or her passport, destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, was done with the intent to force the victim to perform a job or service or stay in that job. See  United States v. Alstatt, 858 F. Supp. 2d 1032, 1047 (D. Neb. 2012)(Finding that government could not assert claim under Section 1592 despite its retention of victim's passport, because the court cannot find beyond a reasonable doubt that the defendants intended to commit peonage). In recognition of this requirement, the cases where plaintiffs have successfully sustained claims for a violation of this Section involve scenarios where defendants assert and maintain actual control over an individual's physical immigration documents.  See Lagayan v. Oden, 199 F. Supp. 3d at 28-29 (Finding that allegations that employer took her passport from her before she boarded the plane to the United States and, kept the passport hidden in their home "for the entirety of Plaintiff's work for them. Was sufficient to support claim under Section 1592);  Nunag–Tanedo, 790 F.Supp.2d at 1147 (Finding that alleged instances where Defendants possessed and refused to return passports and visas was sufficient to state a claim under § 1592); Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)(Finding that Plaintiff allegations that her passport was taken from her under false pretenses shortly after her arrival, and that her employer later came into possession of it and kept it from her were sufficient to state claims under Section 1592).

Plaintiff's Complaint is completely devoid of any such allegation, beyond conclusory statements.   Although his Complaint contains an unsupported allegation that

Cogent knowingly violated this Section "as described above," he fails to allege any factual basis for that contention beyond a mere recitation of the text of the statue and the unsupported allegation that Cogent knowingly violated this Section "as described above" (<u>See</u> Doc. No. 1 at ¶43-44, <u>generally</u>). The previous portions of the Complaint, however, fails to identify any factual basis for that contention. In the preceding parts of the Complaint, Plaintiff does not allege that how Cogent obtained his passport or when destroyed, confiscated, concealed, withheld or intentionally did anything with respect to his passport other than apparently failing to live up to the alleged promise to help him secure a Green Card. More importantly, he fails to allege that Cogent destroyed, or confiscated with the express intent of forcing him into involuntary servitude. This claim therefore does not rise to the level of intent necessary to assert a claim under Section 1592. Accordingly, Plaintiff is unable to support a claim for violation of the Trafficking Act based on this Section.

### 4. 18 U.S.C. §1597 - Unlawful Conduct With Respect to Immigration Documents.

Section 18 U.S.C. §1597 provides in pertinent part:

(a) Destruction, Concealment, Removal, Confiscation, or Possession of Immigration Documents. -- It shall be unlawful for any person to knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration document of another individual –

(1) in the course of violating section 1351 of this title or section 274 of the Immigration and Nationality Act (8 U.S.C. 1324);

(2) with intent to violate section 1351 of this title or section 274 of the Immigration and Nationality Act (8 U.S.C. 1324); or

> (3)  in order to, without lawful authority, maintain, prevent,
> or restrict the labor of services of the individual.

<u>See</u> Section 18 U.S.C. §1597.

Although there appears to be no Court that has addressed this issue, Defendant submits that, like claims under other sections the Trafficking, in order to establish a claim under Section 1597, a plaintiff must prove intent or specifically that the destruction, concealment, confiscation of possession of his or her passport, destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, intentionally in an effort to coerce the victim into involuntary servitude. <u>Cf.</u>  <u>United States v. Alstatt</u>, 858 F. Supp. 2d 1032, 1047 (D. Neb. 2012)(Finding that government could not assert claim under the Act despite its retention of victim's passport, because the court cannot find beyond a reasonable doubt that the defendants intended to commit peonage).

Plaintiff's Complaint is completely devoid of any such allegation that would support a claim under this section, beyond  a mere recitation of the text of the statue and the unsupported allegation that Cogent knowingly violated this Section "as described above" (<u>See</u> Doc. No. 1 at ¶43-44, <u>generally</u>). Once again, it is important to note that the preceding parts of the Complaint do not identify any factual basis for that contention. Plaintiff does not allege that Cogent destroyed, confiscated, concealed, withheld or intentionally did anything with respect to his passport other than apparently failing to live up to the alleged promise to help him secure a Green Card.  Accordingly, the Court should find that Plaintiff is unable to support a claim for violation of the Trafficking Act based on this Section.

**B. Count IV of Plaintiff's Complaint Fails to Set Forth a Viable Claim Against <u>Cogent for Intentional Infliction of Emotional Distress.</u>**

The factual averments of Plaintiff's Complaint also cannot, and do not, support a claim for Intentional Infliction of Emotional Distress as that tort has been defined by the state courts of Pennsylvania.

In particular, Pennsylvania law provides the limited right to recover damages from "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." <u>Winer v. Senior Living Guide, Inc.</u>, 2013 WL 1217582, *14 (W.D. Pa. Jan. 17, 2013)(citing <u>Hoy v. Angelone</u>, 554 Pa. 134, 720 A.2d 745, 753 (1998).  However, the Courts "[h]ave been wary to allow recovery for a claim of intentional infliction of emotional distress." <u>Id</u>. at *15.  "Only if conduct which is extreme or clearly outrageous is established will a claim be proven."  <u>Id</u>  As the Pennsylvania Superior Court noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society."   <u>Id</u>. (citing Buczek<u> v. First National Bank of Mifflintown</u>, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987)).  "Described another way, [i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  <u>Id</u>. (citing <u>Daughen v. Fox</u>, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

"Only a few cases have presented behavior so "outrageous" that courts have been willing   to   allow   a   claim   for intentional infliction of emotional distress." <u>Id</u>.  (<u>see</u>

310364,13014.11

also Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant stuck and killed the plaintiffs' son with a car, failed to seek medical attention, and buried the body in a field); Banyas v. Lower Bucks Hosp., 293 Pa. Super. 122, 437 A.2d 1236 (1981)(plaintiff was involved in a fight which resulted in the other participant receiving a broken jaw that required surgery, but the person died during surgery due to hospital negligence; the hospital falsified the records and the plaintiff was charged with murder); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir.1979)(team physician falsely reported to the media that football player had a fatal disease)).

According to Plaintiff's Complaint, Cogent's alleged conduct includes: underpaying Plaintiff's wages for one (1) month (See Doc No. 1 at ¶¶3, 33), failing to assist Plaintiff in obtaining a Green Card (Id. at ¶¶3, 32), and general unspecified allegations of verbal abuse (Id. at ¶¶3, 35(c)).  Such allegations fall well short of the "outrageous behavior" standard articulated by the Courts in Papieves, Banyas, and Chuy.  To the contrary, Plaintiff's allegations against Cogent are more properly classified as mundane employment disputes rather than extreme, outrageous conduct that goes beyond the bounds of human decency.  Accordingly, as Plaintiff has failed to allege any conduct on the part of Cogent that would meet the requisite standard to support a claim for Intentional Infliction of Emotional Distress, Count IV of Plaintiff's Complaint must be dismissed, with prejudice.

**C.  Count V of Plaintiff's Complaint Fails to Set Forth a Viable Claim Against Cogent for Negligent Infliction of Emotional Distress.**

The factual averments of Plaintiff's Complaint also do not support a claim for Negligent Infliction of Emotional Distress.  Despite Plaintiff's attempt to expand a duty to

Cogent under various constitutional, federal statutory, and international legal provisions[1], a claim for Negligent Infliction of Emotional Distress is driven by state law.  See Jayme v. MCI Corp., 328 F. App'x 768, 770 (3d Cir. 2008)("[A]claim for infliction of emotional distress is similarly a matter of state law").

Under Pennsylvania law, a cause of action for negligent infliction of emotional distress ("NIED") has been limited to the following four factual scenarios: (1) situations where the defendant had a special contractual or fiduciary relationship with the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; and (4) the plaintiff observed a tortious injury to a close relative. Weiley v. Albert Einstein Medical Center, 51 A.3d 202 (Pa.Super. 2012); Toney v. Chester County Hosp., 961 A.2d 192 (Pa.Super. 2008), 36 A.3d 83 (Pa. 2011); MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 592 (W.D. Pa. 2019).

In addition, the Pennsylvania Supreme Court also recognized that "[n]ot all breaches of duties should result in compensable emotional distress claims." Toney v. Chester Cty. Hosp., 614 Pa. 98, 111, 36 A.3d 83, 91 (2011). Instead, the Pennsylvania Supreme Court has also "found it prudent to limit the reach of [a claim for negligent infliction of emotional distress] to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." Toney v. Chester County Hospital, 614 Pa. 98, 36 A.3d 83, 95 (2011).  "The special relationships must encompass an implied duty to care for the plaintiff's emotional well-being" and "[t]he potential emotional harm must not be the type that a reasonable person is expected to bear."

---

[1] None of the statutory provision cited in Count of Plaintiff's Complaint provide a claimant with the express right to recover damages for negligent infliction of emotional distress.

310364.13014.11

Id.  "Compensable emotional harm has been described as "likely to be experienced as a visceral and devastating assault on the self" such that it "resemble[s] physical agony in its brutality."" Id.; MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d at 594.

The Courts have also held that to sustain a cause of action under any of the four theories of negligent infliction of emotional distress, the plaintiff must have experienced physical injury as a result of having been exposed to a traumatic event. Toney v. Chester County Hosp., 2008 PA Super 268, 961 A.2d 192 (2008), order aff'd, 614 Pa. 98, 36 A.3d 83 (2011) (Finding that long-continued nausea or headaches, repeated hysterical attacks, or mental aberration is sufficient physical injury to maintain NIED cause of action); Simmons v. AAA E. Cent. Century III Office, No. CIV.A. 12-1457, 2012 WL 5208630, at *2 (W.D. Pa. Oct. 19, 2012)(Dismissing plaintiff's NIED claim because "he fail[ed] to allege any sort of physical manifestation of the emotional harm that he allegedly suffered at the hands of Defendant.").

In the present case, Plaintiff's Complaint fails to allege that his relationship with Cogent was anything more than that of an employee and employer. Furthermore, Plaintiff's alleged harm consists of a purported wage underpayment, Cogent's alleged failure to assist Plaintiff in obtaining a Green Card, and unspecified verbal abuse.  (See Doc. No. 1 at ¶¶3, 30, 32).  Such actions, even if true, would not result in "visceral and devastating assault on the self." Moreover, Plaintiff's Complaint lacks any allegations that Cogent's purported negligent infliction of emotional distress resulted in bodily harm to Plaintiff.  Accordingly, under the case law cited above, Count V of Plaintiff's Complaint must be dismissed.

### III.    <u>CONCLUSION</u>

For the good and sound reasons advanced in its Partial Motion to Dismiss and Brief in Support, Defendant Cogent Infotech Corp. respectfully requests that this Court grant its Partial Motion to Dismiss in its entirety and dismiss Counts I, IV, and V of Plaintiff's Complaint with prejudice because any amendment would be futile.

Respectfully submitted,

MAIELLO, BRUNGO & MAIELLO, LLP

*/s/ Steven P. Engel*
Steven P. Engel, Esquire
Pa. I.D. #74524
Peter J. Halesey, Esquire
Pa. I.D. #313708
Southside Works
424 South 27th Street, Suite 210
Pittsburgh, PA 15203
(412) 242-4400

*(Attorneys for Defendant)*

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on this 28th day of March, 2020, a true and correct copy of the foregoing **Brief in Support of Partial Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)** has been sent via First-Class U.S. Mail, and has been electronically filed with the Clerk of Court via the District Court Electronic Case Filing system, which will deliver notification of such filing to the following individuals:

Benjamin J. Sweet, Esquire
The Sweet Law Firm, P.C.
1145 Bower Hill Road
Suite 104
Pittsburgh, PA 15243

Christopher L. Nelson, Esquire
John J. Gross, Esquire
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312

MAIELLO, BRUNGO & MAIELLO, LLP

*/s/ Steven P. Engel*
Steven P. Engel, Esquire

310364,13014.11