IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SURESH MALLELA, | : | |
| | : | Civil Action No. 2:19-cv-01658 |
| Plaintiff, | : | |
| | : | |
| v. | : | The Honorable J. Nicholas Ranjan |
| | : | |
| COGENT INFOTECH CORP., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S AMENDED BRIEF IN SUPPORT OF ITS PARTIAL MOTION
TO DISMISS COUNTS I, IV, AND V OF PLAINTIFF'S COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendant Cogent Infotech Corp. ("Cogent"), by and through its attorneys, Maiello,

Brungo, and Maiello, LLP, hereby files this Amended Brief in Support of its Partial Motion

to Dismiss Counts I, IV, and V of Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

## I.      FACTUAL BACKGROUND

On December 20, 2019, Plaintiff Suresh Mallela initiated this action by filing a

Complaint in the United States District Court for the Western District of Pennsylvania.

(See Doc. No. 1).  The Complaint alleges that Mr. Mallela was "lured" into employment

with Cogent as a technology professional with "promises of long-term work, large salaries,

health insurance and other benefits." (Id. at ¶3).  Mr. Mallela further alleges that Cogent

promised him assistance in obtaining a Permanent Residency Card (a "Green Card").  (Id.).

The Complaint, however, specifically alleges that Cogent hired Mr. Mallela at an hourly rate of Sixty Dollars ($60.00) per hour and, further, provided benefits such as "health insurance and paid time off." (Id. at ¶29).  The Complaint alleges that Mr. Mallela began working for Cogent in December, 2017 and ceased working for Cogent on April 30, 2019, after a period of seventeen (17) months.  (Id. at ¶31).  Other than the claim that Cogent purportedly failed to assist Mr. Mallela in obtaining a Green Card, Mr. Mallela's sole employment-related claim against Cogent is that Cogent allegedly failed to pay him wages for one (1) of the seventeen (17) months when he worked for Cogent.  (Id. at ¶33).  Notably, Mr. Mallela alleges that Cogent failed to pay his wages for April, 2019, the last month he worked for Cogent.  (Id.).

The Complaint contains six (6) causes of action against Cogent: (1) a purported violation of the Trafficking Victims Protection Act of 2000 and Trafficking Victims Reauthorization Act of 2003 (the "Trafficking Act"); (2) a purported violation of the Fair Labor Standards Act; (3) an alleged violation of the Pennsylvania Wage Payment and Collection Law; (4) an alleged claim of Intentional Infliction of Emotional Distress; (5) an alleged claim of Negligent Infliction of Emotional Distress; and (6) an alleged claim of Breach of Contract.  (Id. at ¶¶37-69).

## IV.    ARGUMENT

### A.    Count I of the Complaint Fails to Set Forth a Viable Claim Against Cogent Under the Trafficking Victims Protection Act of 2000 and the Trafficking Victims Reauthorization Act of 2003.

Count I of the Complaint alleges that Cogent violated four (4) specific sections of the Trafficking Act, 18 U.S.C. §§1590 – 1597.  Even if accepted as true, the averments in Complaint cannot support a claim under any of these Sections of the Trafficking Act.

**1.  18 U.S.C. §1589 – Forced Labor**

As will be demonstrated by this section of this Brief, the Complaint fails assert a valid claim under Section 1589 of the Trafficking Act because it fails to allege: (1) the required intent on the part of Cogent to coerce Mallela to remain in his job; and/or (2) that Mr. Mallela reasonably believed he had no choice but to remain as an employee of Cogent.

Section 18 U.S.C. §1589 provides, in pertinent part:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

(c) In this section:

(1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on

> another person to cause that person to take some action or refrain from taking some action.
>
> (2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

As a threshold matter,  "[t]he [Trafficking Act] is an Act to combat trafficking of persons, especially into the sex trade, slavery, and slavery-like conditions, in the United States and countries around the world through prevention, through prosecution and enforcement against traffickers, and through protection and assistance to victims of trafficking."  Aguilera v. Aegis Communications Group, LLC, 72 F.Supp. 3d 975, 978 (W.D. Mo. 2014). "Section 1589 [of the act] is intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." Muchira v. Al-Rawaf, 850 F.3d 605, 618 (4th Cir. 2017).  In an effort to do so, the Act provides victims with the right to assert a claim under Section 1598 if they are coerced or forced to perform work or provide service as a result of physical force, physical restraint, serious harm or abuse or if they are mentally coerced to perform work  through threats of force, threats of physical restraint, threats of serious harm to that person or another person. Id.

The Act also recognizes that victims can be coerced into performing work through abuse of law or threatened abuse of the legal process. Id.  Although the Federal Courts have not established a bright-line rule as to what exactly constitutes the type of "abuse of legal process" that is sufficient to support a claim under Section 1598, |several Courts have held

that threats of deportation could amount to an abuse of process and support a claim under Section 1598.   See Adia v. Granduer Management, Inc., 933 F.3d 89, 93 (2d Cir. 2019)(Finding that that employer's representation to an employee that "[employer] would cancel or withdraw his immigration sponsorship if he left them or would be difficult to them regarding his work", could constitute an abuse of legal process under Section 1589(a)(3).   However, as the Ninth Circuit noted in Aguilera v. Aegis Communications Group, LLC, (when discussing the application of the TVPA), "[n]*ot all bad employer-employee relationships will constitute forced labor."*   72 F.Supp.3d at 978 (citing U.S. v. Dann, 652 F.3d 1160, 1169 (9th Cir.2011))(emphasis added).   Moreover, the Courts have held that warnings regarding the potential consequences of an immigrant's decision to leave a job with his or her sponsoring employer is not "serious harm"—and warning of such a consequence is not a "threat"—under the Trafficking Victims Protection Act. See Headley v. Church of Scientology Int'l, 687 F.3d 1173, 1180 (9th Cir. 2012)(recognizing that warnings that immigrant employee could have been declared "suppressive persons" and thus potentially to have lost contact with family, friends if they left their position held not to constitute violation of Act); Muchira v. Al-Rawaf, 850 F.3d at 624 (Recognizing warnings of adverse but legitimate consequences do not amount to coercion that will support claim under abuse of process provisions in Section 1598 of the Act). As a consequence, as the Third Circuit noted in Zavala v. Wal-Mart Stores, Inc., 691 F.3d 527, 540 (3d Cir. 2012), "[a]bsent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude."   Consequently, when "applying the Act, [the Court] must distinguish between improper threats or coercion and permissible

warnings of adverse but legitimate consequences." Muchira v. Al-Rawaf, 850 F.3d at 624, *citing to* Headley, 687 F.3d at 1180.

The Courts also recognize that "*[c]ompulsion of services by the use or threatened use of physical or legal coercion* is a necessary incident of a condition of involuntary servitude." United States v. Kozminski, 487 U.S. 931, 953, 108 S. Ct. 2751, 2765, 101 L. Ed. 2d 788 (1988); see also, Muchira v. Al-Rawaf, 850 F.3d at 618 (Finding that to establish a claim under Section 1589 "[t]here must be evidence from which the jury could find "that the employer *intended* to cause the victim to believe that she would suffer serious harm … if she did not continue to work.") Thus, "[t]he linchpin of the serious harm analysis under §1589 is not just that serious harm was threatened but that *the employer intended the victim to believe that such harm would befall her"* if she left her employment." Muchira v. Al-Rawaf, 850 F.3d at 618 (emphasis added). As a result, a plaintiff, seeking to assert a claim under Section 1589, must establish that the defendant employer *intended* for the use physical force, threats or abuse of process to cause the victim to reasonably believe that he or she had a choice but to perform the work. Id.

The Fourth Circuit's recent decision in Muchira v. Al-Rawaf, supra, clearly illustrates this point. In Muchira, the Fourth Circuit held that a Kenyan national, who was employed as a housemaid for a Saudi family in the United States failed to establish either a violation of § 1589(a)(2) of §1589(a)(3) of the Trafficking Act when it held in pertinent part that:

> Muchira misapprehends the scope of the forced labor statute. "[N]ot all bad employer-employee relationships or even bad employer-immigrant ... relationships will constitute forced labor." And Muchira cannot establish a forced labor claim by presenting evidence that her employment environment caused her to experience psychological harm. Rather, *Muchira must present*

> *sufficient evidence upon which a jury could reasonably conclude that the Saudi family <u>knowingly or intentionally</u> engaged in actions or made threats that were sufficiently serious to compel a reasonable person in Muchira's position to remain in the Saudi family's employ, against her will and in order to avoid such threats of harm, when she otherwise would have left. She has failed to do so. The record does not suggest that the Saudi family knowingly forced Muchira to provide her labor or services by means of serious harm or threats of serious harm*, that she continued to labor in order to avoid physical or psychological harm, or that the conditions of her employment were such that she reasonably believed that she had no viable "exit option."*

> \*                    \*                    \*

> We likewise reject Muchira's claims that she has presented sufficient evidence that the Saudi family knowingly coerced her into providing her labor and services by "by means of the abuse or threatened abuse of law or legal process."

> \*                    \*                    \*

> Again, Muchira misapprehends the statutory requirements of the TVPA. The term " 'abuse or threatened abuse of law or legal process,' means the use or threatened use of a law or legal process ... in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *It requires more than evidence that a defendant violated other laws of this country or encouraged others to do the same. It requires proof that the defendant "knowingly" abused the law or legal process <u>as a means to coerce the victim to provide labor or services against her will</u>*.

850 F.3d at 620–23 (emphasis added)

The Courts also recognize that an alleged victim's claim or belief that he was coerced into involuntary servitude *must be reasonable*. <u>See</u> <u>Muchira v. Al-Rawaf</u>, 850 F.3d at 618 ("The harm or threat of harm, considered from the vantage point of a reasonable person in the place of the victim, must be sufficiently serious to compel that person to remain in her condition of servitude when she otherwise would have left.").  As a result, an employee cannot assert a claim under the Act or allege involuntary servitude if the

310364,13014.11

employee or another reasonable person in their shoes would know or understand that he or she has a choice and can voluntarily quit or leave. Id.

The Third Circuit's decision in Zavala v. Wal Mart Stores Inc., supra, provides a perfect example of this principle.  In Zavala, supra, illegal immigrants who took jobs with contractors of Wal–Mart to clean its stores brought claims under RICO against Wal-Mart, contending that alleged violations of the criminal penalty portion of the Trafficking Act constituted the predicate acts that allowed them to assert the RICO claims against Walmart. The Third Circuit, however, rejected this argument and affirmed the trial court decision, which dismissed these claims, finding that the workers could not assert claims under RICO through the Trafficking Act based on involuntary servitude, when it held:

> To the extent Plaintiffs allege that they were threatened with deportation, those allegations are likewise insufficient to constitute involuntary servitude. In United States v. Kozminski, the Supreme Court observed that it was "possible" that threatening an immigrant with deportation might amount to a "threat of legal coercion" resulting in involuntary servitude. At the same time, the Court endorsed Judge Friendly's observation in United States v. Shackney, 333 F.2d 475 (2d Cir.1964): "The most ardent believer in civil rights legislation might not think that cause would be advanced by permitting the awful machinery of the criminal law to be brought into play whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful.". In Shackney, the Second Circuit further held:
>
>> [W]e see no basis for concluding that because the statute can be satisfied by a credible threat of imprisonment, it should also be considered satisfied by a threat to have the employee sent back to the country of his origin, at least absent circumstances which would make such deportation equivalent to imprisonment or worse.... [A] holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, ... *not a situation where the servant knows he has a choice*

310364,13014.11

> *between continued service and freedom*, even if the
> master has led him to believe that the choice may
> entail consequences that are exceedingly bad....
> While a credible threat of deportation may come
> close to the line, it still leaves the employee with a
> choice, and we do not see how we could fairly bring
> it within § 1584 without encompassing other types of
> threat.
>
> We agree with Judge Friendly's analysis. Absent some special
> circumstances, threats of deportation are insufficient to constitute
> involuntary servitude.
>
> Plaintiffs do not claim that they were compelled to come to work
> each day. While they allege that managers often kept them beyond
> the end of their shift to finish their work, they do not claim that
> they were forced to remain once that work was finished. The
> record demonstrates that Plaintiffs often switched jobs, freely
> moving to different employers in different cities. Plaintiffs do not
> allege that previous employers ever pursued them to compel their
> return to a previous position. And while a broad reading of
> Plaintiffs' allegations could lead to the conclusion that they were
> threatened with deportation for refusing to work, that is legally
> insufficient to constitute involuntary servitude.

691 F.3d at 540–41.

The application of these principles to Mr. Mallela's claim under Section 1598 of

the Act, likewise, compels the dismissal of this portion his claim/Complaint. Indeed, the

Complaint is utterly devoid of any allegations of Cogent intentionally threatening Mallela

or otherwise intentionally coercing him to remain in Cogent's employ.  (See Doc. No. 1,

generally).   The Complaint's only allegations of wrongdoing against Cogent involve

Cogent's purported lackadaisical approach to helping Mr. Mallela obtain a Green Card and

Cogent's supposed failure to pay him for a month of work. (See Doc. No. 1 at ¶¶3, 30, 32,

33).  The averments of the Complaint establish no connection between these actions and

Mr. Mallela's decision to remain in his position or that any way establish that this was the

intended effect of Cogent's conduct.

310364,13014.11

There is no allegation that demonstrates or alleges how Cogent's action forced Mr. Mallela to remain employed by Cogent or that otherwise suggest that the actions of Cogent forced him to reasonably believe that he had no choice other than to remain in his job. In fact, Mr. Mallela's own allegations demonstrate that he left Cogent's employment voluntarily after April 30, 2019 (See Complaint, ¶31).

The Complaint is also devoid of any allegation that Cogent abused the legal process or threatened Mr. Mallela's immigration status, beyond a conclusory statement that Cogent unlawfully retaliated against Mr. Mallela by withholding pay, due to his purported complaints of illegal treatment, and that this somehow jeopardized his visa status or otherwise cause him to remain employed with Defendant. (See Plaintiff's Complaint at ¶35(d)).  It is unknown how an alleged withholding of a month's pay could jeopardize one's immigration status, other than possibly making it harder for the applicant/immigrant to pay counsel or filing fees. Such a connection, however,  is tenuous at best as the Complaint demonstrates that Mallela was admittedly paid a considerable amount of wages for the year and a half period before April of 2019. In addition, although the Complaint alleges that Cogent failed to provide assistance to Mr. Mallela in obtaining a Green Card, it fails to allege that Cogent's inaction was designed to coerce him to remain in Cogent's employ against his will.  To the contrary, the allegations in the Complaint demonstrate that he was well-compensated for his services by receiving a high hourly wage and fringe benefits.  Such an arrangement implies a traditional employee-employer relationship rather than the type of coercive behavior which the Trafficking Act was designed to address. Accordingly, the claims under Section 1598 should be dismissed.

**2.    18 U.S.C. §1590 – Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor.**

The Complaint also fails state a claim under Section 1590 of the Trafficking Act, because it fails to allege a required predicate underlying violation of the Act.

Section 18 U.S.C.A. §1590 provides, in pertinent part:

> (a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

As discussed in the case of Martinez-Rodriguez v. Giles, 391 F.Supp. 3d 985, 999 (D. Idaho 2019), "[a]s a threshold matter, a §1590 claim depends on a predicate [Trafficking Act] offense—such as forced labor." Id. (citing Lagayan v. Oden, 199 F. Supp. 3d 21, 29 (D.C.C. 2016)).  If the underlying activity is not a violation of the Trafficking Act, the action cannot support a claim under Section 1590. Id.

In addition, the Courts have recognized that mere disagreements regarding job duties or employment obligations do not rise to the level of predicate offenses and therefore will not support a claim under Section 1590 of the Act. Martinez-Rodriguez v. Giles, 391 F.Supp. 3d at 1000. For example, in Martinez-Rodriguez, a group of professional veterinarians sued an employer under Section 1590 of the Trafficking Act claiming that the employer engaged in a conspiracy to bring the veterinarians to the United States for the purpose of forced labor.  The District Court, however, disagreed, finding that the veterinarians' claims under Section 1590 were not sustainable as there was no underlying violation of Section 1589 when it held:

[T]he Court has weighed all of the facts and—even accepting Plaintiffs' version as true (as is the Court's duty at summary judgment)—the testimony and evidence does not amount to either forced labor or trafficking under the [Trafficking Act]. At the least, the issues raised are disagreements about job duties, employment obligations, or expectations, and at the very most they are employment, contract, or discrimination claims,[Note 7] but none of the testimony rises to the level of federal trafficking or forced labor.

> [Note 7] Said differently, there are clearly disagreements in this case—potentially even material disputes—concerning whether or not Defendants fulfilled their promises in regard to work duties, working conditions, or job compensation; however, none of these arguments are relevant to the claims of forced labor or trafficking (or if they are related, it is only secondary). The question at issue in these federal [Trafficking Act] claims is whether Defendants knowingly obtained and kept Plaintiffs employed through illegal means. The Court does not find sufficient evidence (and no dispute as to any evidence) to support such a finding.

391 F. Supp. 3d 985, 1000 (D. Idaho 2019)

Similarly, the claims asserted by Mr. Mallela are more akin to employment and contractual disputes, which do not rise to an actionable claim for a violation of the forced labor statute.  As a result, this Court, like the Court in Martinez-Rodriguez v. Giles, supra, should find that they do not establish a cognizable forced labor claim, and dismiss Mr. Mallela's claim under this Section of the Act.

3.      **18 U.S.C. §1592 - Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor.**

The Complaint also fails to assert a valid claim under Section 1592 of the Trafficking Act, because the Complaint fails to allege the type of unlawful conduct with

respect to Mallela's immigration documents that is necessary to assert a claim under this Section.

Section 18 U.S.C. §1592 provides in pertinent part:

> (a) Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person—
>
>> (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a);
>>
>> (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or
>>
>> (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000,
>
> shall be fined under this title or imprisoned for not more than 5 years, or both.

However, as with other claims under the Trafficking Act, in order to establish a claim under Section 1592, a plaintiff must prove intent or specifically that the destruction, concealment, confiscation or possession of his or her passport or other immigration document, was done with the intent to coerce the victim to perform a job or service. See United States v. Alstatt, 858 F. Supp. 2d 1032, 1047 (D. Neb. 2012)(Finding that government could not assert claim under Section 1592 despite its retention of victim's passport, because the court cannot find beyond a reasonable doubt that the defendants intended to commit peonage). In recognition of this requirement, the cases where plaintiffs have successfully sustained claims for a violation of this Section involve scenarios where defendants assert and maintain actual control over an individual's physical immigration

documents.  See Lagayan v. Oden, 199 F. Supp. 3d at 28-29 (Finding that allegations that employer took her passport from her before she boarded the plane to the United States and, kept the passport hidden in their home "for the entirety of Plaintiff's work for them. Was sufficient to support claim under Section 1592);  Nunag–Tanedo, 790 F.Supp.2d at 1147 (Finding that alleged instances where Defendants possessed and refused to return passports and visas was sufficient to state a claim under § 1592); Franco v. Diaz, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)(Finding that Plaintiff allegations that her passport was taken from her under false pretenses shortly after her arrival, and that her employer later came into possession of it and kept it from her were sufficient to state claims under Section 1592).

The Complaint is completely devoid of any such allegation, beyond conclusory statements. Although the Complaint contains an unsupported allegation that Cogent knowingly violated this Section "as described above," the Complaint fails to allege any factual basis for that contention beyond  a mere recitation of the text of the statue and the unsupported allegation that Cogent knowingly violated this Section "as described above" (See Doc. No. 1 at ¶43-44, generally). A review of the preceding portions of the Complaint, however, fails to identify any factual basis for that contention. In the preceding parts of the Complaint, it does not allege that how Cogent obtained Mr. Mallela's passport or when destroyed, confiscated, concealed, withheld or intentionally did anything with respect to his passport other than apparently failing to live up to the alleged promise to help him secure a Green Card. More importantly, he fails to allege that Cogent destroyed, or confiscated with the express intent of forcing him into involuntary servitude.  This claim therefore does not rise to the level of intent necessary to assert a claim under Section 1592. Accordingly, Mr. Mallela is unable to support a claim for violation of the Trafficking Act

based on this Section and this claim or portion of the Complaint should therefore be dismissed.

**4.      18 U.S.C. §1597 - Unlawful Conduct With Respect to Immigration Documents.**

The Complaint, likewise, fails to assert a valid claim under Section 1597 of the Trafficking Act, because the Complaint fails to allege the type of unlawful conduct with respect to Mallela's immigration documents that is necessary to assert a claim under this Section.

Section 18 U.S.C. §1597 provides in pertinent part:

(a) Destruction, Concealment, Removal, Confiscation, or Possession of Immigration Documents. -- It shall be unlawful for any person to knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration document of another individual –

(1) in the course of violating section 1351 of this title or section 274 of the Immigration and Nationality Act (8 U.S.C. 1324);

(2) with intent to violate section 1351 of this title or section 274 of the Immigration and Nationality Act (8 U.S.C. 1324); or

(3) in order to, without lawful authority, maintain, prevent, or restrict the labor of services of the individual.

Although there appears to be no Court that has addressed this issue, Cogent submits that, like claims under other sections in the Trafficking Act, in order to establish a claim under Section 1597, a plaintiff must prove intent or specifically that the employer took action or specifically destroyed, concealed or confiscated a person's passport or other immigration document, intentionally in an effort to coerce the victim into involuntary servitude. Cf. United States v. Alstatt, 858 F. Supp. 2d 1032, 1047 (D. Neb. 2012)(Finding that government could not assert claim under the Act despite its retention of victim's

passport, because the court cannot find beyond a reasonable doubt that the defendants intended to commit peonage).

The  Complaint is completely devoid of any such allegation that would support a claim under this section, beyond  a mere recitation of the text of the statue and the unsupported allegation that Cogent knowingly violated this Section "as described above" (See Doc. No. 1 at ¶43-44, generally). Once again, it is important to note that the preceding sections of the Complaint do not identify any factual basis for that contention. They  do not allege that Cogent destroyed, confiscated, concealed, withheld or intentionally did anything with respect to Mr. Mallela's passport other than apparently failing to live up to the alleged promise to help him secure a Green Card.  Accordingly, the Court should find that Mr. Mallela is unable to support a claim for violation of the Trafficking Act based on Section 1597 and dismiss this claim/portion of the Complaint.

**B.  Count IV of the Complaint Fails to Set Forth a Viable Claim Against Cogent for Intentional Infliction of Emotional Distress.**

The factual averments of Plaintiff's Complaint also cannot, and do not, support a claim for Intentional Infliction of Emotional Distress as that tort has been defined by the state courts of Pennsylvania.  In particular, Pennsylvania law provides the limited right to recover damages from "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."  Winer v. Senior Living Guide, Inc., 2013 WL 1217582, *14 (W.D. Pa. Jan. 17, 2013)(citing Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745, 753 (1998).  However, the Courts "[h]ave been wary to allow recovery for a claim of intentional infliction of emotional distress." Id. at *15.  "Only if conduct which is extreme or clearly outrageous is established will a claim be proven."  Id.  As the

310364,13014.11

Pennsylvania Superior Court noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citing Buczek v. First National Bank of Mifflintown, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987)). "Described another way, [i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Id. (citing Daughen v. Fox, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

"Only a few cases have presented behavior so "outrageous" that courts have been willing to allow a claim for intentional infliction of emotional distress." Id. (see also Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant stuck and killed the plaintiffs' son with a car, failed to seek medical attention, and buried the body in a field); Banyas v. Lower Bucks Hosp., 293 Pa. Super. 122, 437 A.2d 1236 (1981)(plaintiff was involved in a fight which resulted in the other participant receiving a broken jaw that required surgery, but the person died during surgery due to hospital negligence; the hospital falsified the records and the plaintiff was charged with murder); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir.1979)(team physician falsely reported to the media that football player had a fatal disease)).

According to the Complaint, Cogent's alleged conduct includes: underpaying Mr. Mallela's wages for one (1) month (See Doc No. 1 at ¶¶3, 33), failing to assist him in obtaining a Green Card (Id. at ¶¶3, 32), and general unspecified allegations of verbal abuse (Id. at ¶¶3, 35(c)). Such allegations fall well short of the "outrageous behavior" standard

articulated by the Courts in <u>Papieves</u>, <u>Banyas</u>, and <u>Chuy</u>.  To the contrary, the  allegations against Cogent are more properly classified as mundane employment disputes rather than extreme, outrageous conduct that goes beyond the bounds of human decency.  Accordingly, as Mr. Mallela has failed to allege any conduct on the part of Cogent that would meet the requisite standard to support a claim for Intentional Infliction of Emotional Distress, Count IV of the Complaint must be dismissed, with prejudice.

### C.  Count V of the Complaint Fails to Set Forth a Viable Claim Against Cogent for Negligent Infliction of Emotional Distress.

The factual averments of the Complaint also do not support a claim for Negligent Infliction of Emotional Distress.  Despite Mr. Mallela's attempt to expand a duty to Cogent under various constitutional, federal statutory, and international legal provisions[1], a claim for Negligent Infliction of Emotional Distress is driven by state law.  <u>See</u> <u>Jayme v. MCI Corp.</u>, 328 F. App'x 768, 770 (3d Cir. 2008)("[A]claim for infliction of emotional distress is similarly a matter of state law").

Under Pennsylvania law, a cause of action for negligent infliction of emotional distress ("NIED") has been limited to the following four factual scenarios: (1) situations where the defendant had a special contractual or fiduciary relationship with the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; and (4) the plaintiff observed a tortious injury to a close relative. <u>Weiley v. Albert Einstein Medical Center</u>, 51 A.3d 202 (Pa.Super. 2012); <u>Toney v. Chester County Hosp.</u>, 961 A.2d 192 (Pa.Super.

---

[1] None of the statutory provisions cited in Count V of Complaint provide a claimant with the express right to recover damages for negligent infliction of emotional distress.

2008), 36 A.3d 83 (Pa. 2011); MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d 565, 592 (W.D. Pa. 2019).

In addition, the Pennsylvania Supreme Court also recognized that "[n]ot all breaches of duties should result in compensable emotional distress claims." Toney v. Chester Cty. Hosp., 614 Pa. 98, 111, 36 A.3d 83, 91 (2011). Instead, the Pennsylvania Supreme Court has also "found it prudent to limit the reach of [a claim for negligent infliction of emotional distress] to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." Toney v. Chester County Hospital, 614 Pa. 98, 36 A.3d 83, 95 (2011). "The special relationships must encompass an implied duty to care for the plaintiff's emotional well-being" and "[t]he potential emotional harm must not be the type that a reasonable person is expected to bear." Id. "Compensable emotional harm has been described as "likely to be experienced as a visceral and devastating assault on the self" such that it "resemble[s] physical agony in its brutality."" Id.; MDB v. Punxsutawney Christian Sch., 386 F. Supp. 3d at 594.

The Courts have also held that to sustain a cause of action under any of the four theories of negligent infliction of emotional distress, the plaintiff must have experienced physical injury as a result of having been exposed to a traumatic event. Toney v. Chester County Hosp., 2008 PA Super 268, 961 A.2d 192 (2008), order aff'd, 614 Pa. 98, 36 A.3d 83 (2011) (Finding that long-continued nausea or headaches, repeated hysterical attacks, or mental aberration is sufficient physical injury to maintain NIED cause of action); Simmons v. AAA E. Cent. Century III Office, No. CIV.A. 12-1457, 2012 WL 5208630, at *2 (W.D. Pa. Oct. 19, 2012)(Dismissing plaintiff's NIED claim because "he fail[ed] to

allege any sort of physical manifestation of the emotional harm that he allegedly suffered at the hands of Defendant.").

In the present case, the Complaint fails to allege that Mr. Mallela's relationship with Cogent was anything more than that of an employee and employer. Furthermore, the Complaint alleges that Mr. Mallela's harm consisted of a purported wage underpayment, Cogent's alleged failure to assist him in obtaining a Green Card, and unspecified verbal abuse. (See Doc. No. 1 at ¶¶3, 30, 32). Such actions, even if true, would not result in "visceral and devastating assault on the self." Moreover, Plaintiff's Complaint lacks any allegations that Cogent's purported negligent infliction of emotional distress resulted in bodily harm to Mr. Mallela. Accordingly, under the case law cited above, Count V of the Complaint must be dismissed.

## II.    CONCLUSION

For the good and sound reasons advanced in its Partial Motion to Dismiss and Brief in Support, Defendant Cogent Infotech Corp. respectfully requests that this Court grant its Partial Motion to Dismiss in its entirety and dismiss Counts I, IV, and V of Plaintiff's Complaint with prejudice because any amendment would be futile.

Respectfully submitted,

MAIELLO, BRUNGO & MAIELLO, LLP

/s/ Steven P. Engel
Steven P. Engel, Esquire
Pa. I.D. #74524
Southside Works
424 South 27th Street, Suite 210
Pittsburgh, PA 15203
(412) 242-4400

(Attorneys for Defendant)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 28th day of March, 2020, a true and correct copy of the foregoing **Brief in Support of Partial Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)** has been sent via First-Class U.S. Mail, and has been electronically filed with the Clerk of Court via the District Court Electronic Case Filing system, which will deliver notification of such filing to the following individuals:

Benjamin J. Sweet, Esquire
The Sweet Law Firm, P.C.
1145 Bower Hill Road
Suite 104
Pittsburgh, PA 15243

Christopher L. Nelson, Esquire
John J. Gross, Esquire
The Weiser Law Firm, P.C.
22 Cassatt Avenue
Berwyn, PA 19312

MAIELLO, BRUNGO & MAIELLO, LLP


*/s/ Steven P. Engel*
Steven P. Engel, Esquire