## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SURESH MALLELA, | ) | |
| Plaintiff, | ) | 2:19-cv-01658-NR |
| v. | ) | |
| COGENT INFOTECH CORP., | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Mr. Mallela filed this action against his former employer, Cogent, where he worked as a technology professional. Mr. Mallela alleges, generally, that Cogent "lured" him from his native country of India with the hollow promise of paying him well and helping him obtain a green card. Ultimately, Mr. Mallela was paid $60 dollars per hour and worked for Cogent for 17 months before he and Cogent parted ways. He alleges that he was never paid for his last month of work and that Cogent didn't do anything to advance his green-card application.

With this background, Mr. Mallela brings claims against Cogent for violating federal and state fair labor laws, breach of contract, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), and violation of the Trafficking Victims Protection Act of 2000 and Trafficking Victims Reauthorization Act of 2003, 18 U.S.C. § 1589 *et seq.* (collectively, "Trafficking Act").

Cogent now moves to dismiss the claims of IIED, NIED, and violation of the Trafficking Act, arguing that Mr. Mallela has pled insufficient facts to state these claims. The Court agrees.

Because Mr. Mallela has only made threadbare allegations of emotional distress and alleges conduct that falls far short of human trafficking, forced labor, or document servitude, the Court will grant Cogent's motion.  But the Court will dismiss those claims without prejudice, and allow Mr. Mallela an opportunity file an amended complaint in order to try to sufficiently state those claims.

## FACTUAL & PROCEDURAL BACKGROUND

Accepting all factual allegations in Mr. Mallela's complaint as true, he is a native of India and technology professional.  [ECF 1, ¶ 9].  Cogent is a Pittsburgh-based IT consulting and workforce-fulfillment firm.  [ECF 1, ¶ 10].

In October 2017, Cogent hired Mr. Mallela as a Microsoft Azure Platform Administrator.  [ECF 1, ¶ 29].  In an October 31, 2017, letter written by Cogent CEO Nandan Banerjee, Cogent represented to Mr. Mallela, among other things, that he would be paid a base salary of $105,000 per year and would be entitled to benefits, such as health insurance and paid time off.  [ECF 1, ¶ 29].  Cogent and Mr. Mallela later agreed to modify this agreement in one way, making Mr. Mallela an hourly employee to be paid $60 per hour.  [ECF 1, ¶ 29].  The October 31, 2017, letter also memorialized a representation that Cogent would sponsor Mr. Mallela for a green card and that the application process would be started after three months of employment.  [ECF 1, ¶ 30].

Based on the October 31, 2017, letter, Mr. Mallela came to the U.S. and worked for Cogent on an H-1B visa starting in December 2017.  [ECF 1, ¶ 31].  He was "hired out" to various companies by Cogent, but was continuously a Cogent employee until April 30, 2019.  [ECF 1, ¶ 31].  Mr. Mallela does not allege under what conditions he parted ways with Cogent.

Mr. Mallela now complains that Cogent didn't "do anything meaningful (if at all) to fulfill its promise to obtain" a green card, [ECF 1, ¶ 32], and that Cogent refused to pay Mr. Mallela for his final month of work.  [ECF 1, ¶ 33].

Mr. Mallela alleges that Cogent "injured" Mr. Mallela by "[v]erbal[ly] abusing Plaintiff and threatening legal action against Plaintiff whenever Plaintiff questioned illegal conduct or inquired about the lack of pay." [ECF 1, ¶ 35].   However, Mr. Mallela does not describe what the threatened "legal action" was, what Cogent's "illegal conduct" was, or whether there even was a "lack of pay" issue except for the month of April 2019.  Cogent further "injured" Mr. Mallela by "[u]nlawfully retaliating against Plaintiff by, among other things, withholding Plaintiff's pay, for complaining about the illegal treatment Plaintiff was forced to endure during the employment, thus jeopardizing Plaintiff's visa status and immigration prospects."  [ECF 1, ¶ 35].  Mr. Mallela nowhere describes what "illegal treatment" he was forced to endure other than missing a paycheck for April 2019 and a lack of movement on his green-card application.

In this lawsuit, Mr. Mallela brings claims for violating federal and state fair labor laws, breach of contract, IIED, NIED, and violation of the Trafficking Act.

In terms of the IIED claim, Mr. Mallela alleges that "Cogent intentionally harassed and inflicted emotional injury on Plaintiff by subjecting Plaintiff to outrageous treatment wherein Plaintiff was verbally and mentally abused and was treated in a demeaning and inferior manner."  [ECF 1, ¶ 56].  However, the complaint does not allege any specific facts, such as names, dates or descriptions, as to how or when Mr. Mallela was abused and by whom. Further, the IIED claim states that "Cogent's actions caused Plaintiff severe distress," but does not describe that distress in any detail.  [ECF 1, ¶ 58].

In terms of the NIED claim, Mr. Mallela alleges that Cogent owed a duty under federal law and the law of nations that it breached "by forcing Plaintiff to work through the use of threats of serious harm and psychological, physical, and legal coercion, and subjected Plaintiff to conditions of forced labor." [ECF 1, ¶ 61]. Mr. Mallela describes no "duty," "threats of serious harm," "coercion," or "conditions of forced labor" in any detail. Mr. Mallela claims that he suffered "severe distress," but does not describe it. [ECF 1, ¶ 62].

Finally, as for the Trafficking Act, Mr. Mallela alleges violations for four specific sections: (1) 18 U.S.C. §1589 (forced labor); (2) §1590 (trafficking into servitude); (3) §1592 (unlawful conduct with respect to documents in furtherance of trafficking or forced labor); and (4) §1597 (unlawful conduct with respect to immigration documents). Mr. Mallela claims that Cogent violated these sections by the "abuse or threatened abuse of law or legal process and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, failure to perform the labor or services described herein would result in serious harm or physical restraint." [ECF 1, ¶ 39]. This language tracks the statutory language of Section 1589, but does not describe any specific instances of Cogent threatening legal action against him or making him fear for his safety.

Further, Mr. Mallela re-states the requirements of Sections 1592 and 1597 in his complaint, claiming that "Cogent knowingly destroyed, concealed, removed, confiscated, and/or possessed" his immigration and government identification documents in violation of the Act. [ECF 1, ¶ 44]. He does not allege which specific documents Cogent took and when Cogent took them. While Mr. Mallela alleges throughout the complaint that Cogent didn't make any progress on his green-card application, he doesn't claim that Cogent took his passport or other documents to keep him from leaving Cogent's employ.

Against this backdrop, Cogent seeks to dismiss the claims for IIED, NIED, and violations of the Trafficking Act.

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." However, "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "The Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786 (cleaned up).

## DISCUSSION & ANALYSIS

The Court will dismiss the IIED, NIED, and Trafficking Act claims without prejudice because there are not enough facts alleged to plausibly support any of these claims. For the IIED and NIED claims, there are insufficient facts alleged as to physical injury. For the Trafficking Act claim, there are insufficient facts alleged as to forced labor, trafficking, and confiscation of immigration documents.

## I.      The IIED and NIED claims fail because of insufficient allegations of physical injury.

"To state a claim for either negligent or intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege some physical injury, harm or illness caused by the defendant's conduct." *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (citations omitted).  The physical injury, harm or illness must be "of such severity that the plaintiff requires medical or psychological treatment." *Blythe v. Scanlan*, No. 14-7268, 2015 WL 4743786, at *4 n.24 (E.D. Pa. Aug. 11, 2015) (citing *Corbett*, 934 F. Supp. at 684).

Here, Mr. Mallela alleges no physical injury.  He claims, vaguely, that he has suffered "severe distress," [ECF 1, ¶¶ 58, 62], without describing what that distress is and whether he has sought treatment from a medical doctor or psychologist.  *Cf. Corbett*, 934 F. Supp. at 684-85 ("Pennsylvania courts have found that symptoms of severe depression, nightmares, stress and anxiety, requiring psychological treatment, and ongoing mental, physical, and emotional harm sufficiently state physical harm or injury to sustain causes of action for infliction of emotional distress.") (cleaned up).  Without more, Mr. Mallela cannot state a claim for IIED or NIED.[1]

## II.     The Trafficking Act claim fails.

While the Trafficking Act is primarily a criminal statute, a victim may also bring a civil action under it for damages and attorneys' fees.  *See Muchira*

---

[1] At a minimum, these claims must be dismissed for failure to plead sufficient allegations of physical injury.  But these claims, as currently pled, have other shortcomings, too.  For instance, Mr. Mallela does not sufficiently describe what specific conduct he considers "outrageous" for the IIED claim or what specific duty Cogent breached (and how) for the NIED claim.  Any amended complaint must address all of these factual shortcomings.

*v. Al–Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (citing 18 U.S.C. § 1595). Here, the facts, as alleged, do not amount to plausible violations of the Trafficking Act. Specifically, Mr. Mallela unsuccessfully alleges a violation of the provision on forced labor (18 U.S.C. § 1589), along with provisions that are predicated on the violation of, or intent to violate, Section 1589—such as trafficking into servitude (18 U.S.C. § 1590). He further fails to adequately allege document servitude (18 U.S.C. §§ 1592 and 1597).

### A. The forced-labor and trafficking-into-servitude claims fail because Mr. Mallela has failed to plead sufficient facts as to Cogent's intent and the threat of harm.

Mr. Mallela's allegations do not plausibly allege violations of Section 1589, and therefore do not allege violations of Section 1590 either.

Section 1589,[2] the forced-labor provision, was "passed to implement the Thirteenth Amendment against slavery or involuntary servitude," and is "intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion, as well as through physical or legal coercion." *Muchira*, 850 F.3d at 617 (cleaned up). Similarly, a trafficking-into-servitude claim under Section 1590[3] "prohibits human trafficking to further forced

---

[2] Section 1589(a) makes liable anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means— (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]"

[3] Section 1590(a) makes liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter[.]"

labor." *Nunag–Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011).   A Section 1590 claim is derivative—*i.e.*, it "depends on a predicate TVPRA offense—such as forced labor." *Martinez-Rodriguez v. Giles*, 391 F. Supp. 3d 985, 998-99 (D. Idaho 2019)  (citing *Lagayan v. Oden*, 199 F. Supp. 3d 21, 29 (D.C.C. 2016)).

The cases construing Section 1589 show that Mr. Mallela must, at a minimum, allege that: (1) Cogent intended to coerce him to remain in his job; and (2) that he reasonably believed that the threat of harm was so serious that he had no choice but to remain a Cogent employee.  *See Martinez-Rodriguez*, 391 F. Supp. 3d at 991 ("In order to show that someone violated the Federal Forced Labor Statute, it must be demonstrated that first, the threat of harm was serious; and second, that the defendant had the requisite scienter, or bad state of mind.") (cleaned up).  The complaint, as currently pled, fails to plead sufficient facts to meet either element.

First, the complaint fails to set forth any allegations of bad intent or scienter by Cogent.  To be clear, Mr. Mallela need not plead "smoking gun" evidence.  But he has to plead some set of inferences or circumstances of conscious misbehavior or recklessness by Cogent.  *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (scienter, as required under the Private Securities Litigation Reform Act, can be established by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.") (quotations and citations omitted).   The complaint lacks any such allegations.

Second, the complaint fails to allege threat of serious harm.  The threat is "considered from the vantage point of a reasonable person in the place of the victim" and "must be sufficiently serious to compel that person to remain." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) (cleaned up).

Typically, "forced labor situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are used to prevent vulnerable victims from leaving and to keep them bound to their captors." *Muchira*, 850 F.3d at 618–19 (quoting *United States v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015) and collecting cases) (cleaned up). That said, the situation need not always be so dire. Courts have often found that "serious harm" includes "threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Shukla v. Sharma*, No. 07-CV-2972 CBA CLP, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) (cleaned up).

However, "not all bad employer-employee relationships will constitute forced labor." *Aguilera v. Aegis Commc'ns Grp., LLC*, 72 F. Supp. 3d 975, 978 (W.D. Mo. 2014) (citation omitted); *see also Muchira*, 850 F.3d at 619–20 (affirming award of summary judgment to defendants where: (1) plaintiff admitted she came to the United States willingly; (2) defendants never physically abused her or physically restrained or impeded her from leaving her employment; and (3) defendants never threatened her or her loved ones with physical harm, arrest, deportation, adverse immigration consequences, or any other legal consequences if she left their employment).

Thus, the cases suggest that much more is needed than what is pled here since, typically, forced-labor claims only survive dispositive legal motions where: (1) plaintiffs are severely underpaid; (2) plaintiffs are confined, starved,

or physically abused; or (3) if plaintiffs are not physically abused, they are coerced into staying by means of an employer threatening objectively harmful things—such as criminal action or deportation proceedings. ***None*** of these circumstances are alleged in the complaint. *See* [ECF 1, ¶¶ 38-39].

Perhaps to correct this, Mr. Mallela has sought to include additional allegations in his briefing on the motion to dismiss by stating that he experienced "'serious harm,' including psychological, financial, and/or reputational harm, that was sufficiently serious, under all the surrounding circumstances, to compel him reasonably to continue performing labor or services in order to avoid incurring that harm." [ECF 17, p. 5 n.3]. Even if the Court could consider this statement as a properly pled fact, it would be insufficient to state a claim, at least without more detail.

Indeed, even the cases cited by Mr. Mallela in his briefing belie the argument that he has pled sufficient facts. In the cases that survive motions to dismiss and other dispositive legal motions, the plaintiffs alleged egregious facts that are simply not alleged here. *See, e.g., Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 522-27 (D. Md. 2016) (granting motion for default judgment where plaintiff alleged defendant, among other things: (1) confiscated plaintiff's passport and threatened to deport plaintiff if she ever left defendant's employ; (2) committed fraud to obtain plaintiff's visa and threatened to abandon plaintiff in South Africa if plaintiff did not go along with the fraud; (3) forced plaintiff to work over seventeen hours per day; (4) refused to pay plaintiff for the first several months of employment, and then after that paid plaintiff an average of fifty cents per hour; and (5) subjected plaintiff to "grievous working conditions and psychological abuse," including forcing plaintiff to sleep in the basement on a wooden floor with only one pillow and a blanket); *Ramos-Madrigal v. Mendiola Forestry Serv., LLC*, 799 F. Supp. 2d

958, 960 (W.D. Ark. 2011) (refusing to dismiss where plaintiffs alleged defendants knowingly concealed the workers' H-2B visa extension documents, told workers they would not return these documents until the end of the contract, and threatened to report workers to immigration officials); *Bistline v. Parker*, 918 F.3d 849, 872 (10th Cir. 2019) (plaintiffs pled plausible forced-labor claims against church leader and church where specifically pled allegations included, for instance: forcing underage children to work dangerous construction jobs, evicting a family when one of the family members defied plaintiff, ordering a twelve-year-old boy to move to a different state and work on a ranch, failure to pay plaintiffs at all for work performed, and forcing underage females to engage in coercive sexual relationships); *Novoa v. The Geo Group, Inc.*, No. EDCV 17-2514, 2018 WL 4057814, *5 (C.D. Cal. Aug. 22, 2018) (declining to dismiss prisoner's forced labor claim because it contained specific allegations of receiving rotten food and dirty water, being forced to work for $1.00 per day, and being threatened with solitary confinement if he stopped working).

By contrast, Mr. Mallela's current allegations cannot plausibly show that he was subjected to forced labor or trafficking, since he was not reasonably coerced into remaining at Cogent. He was paid $60 per hour (except for the last month), could quit Cogent at any time, and no specific threats were made against him. Without more factual detail as to his working conditions and the severity of any threats of harm, Mr. Mallela cannot establish at this juncture a plausible claim.

**B.    The document-servitude claims fail as Mr. Mallela has not pled sufficient facts regarding confiscation of any documents.**

Mr. Mallela also does not adequately allege plausible document-servitude claims (*i.e.*, violations of Sections 1592 and 1597).

A document-servitude claim under Section 1592[4] "prohibits destroying or confiscating travel-related and immigration-related documents in the course of a violation or with intent to violate" the Trafficking Act.  *Nunag–Tanedo*, 790 F. Supp. 2d at 1147 (cleaned up).  Similarly, a document-servitude claim under Section 1597[5] prohibits destroying or confiscating an individual's passport or immigration document in order to unlawfully restrict the individual's labor.  *See id.*

Initially, the document-servitude claims under Sections 1592 and 1597 must be dismissed because the forced-labor claim under Section 1589 is being dismissed.  That is, the document-servitude claims are predicated and dependent on a violation, or intent to violate, the underlying forced-labor statutory provision.  Because Mr. Mallela has not sufficiently pled a Section

---

[4] Section 1592 makes liable "[w]hoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person (1) in the course of a violation of [the Trafficking Act]; (2) with intent to violate [the Trafficking Act]; or (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move  or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons[.]"

[5] Section 1597 makes it unlawful for "any person to knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration  document of another individual . . . (3) in order to, without lawful authority, maintain, prevent, or  restrict the labor of services of the individual."

1589 forced-labor claim as noted above (or facts to demonstrate an intent to violate Section 1589), the dependent Section 1592 and 1597 claims fail. *See United States v. Alstatt*, 858 F. Supp. 2d 1032, 1047 (D. Neb. 2012) (government could not assert Section 1592 claim despite defendants' retention of victim's passport because the court could not find beyond a reasonable doubt that the defendants intended to commit peonage or forced labor); *Franco v. Diaz,* 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014) ("In connection with the purported violations of Section 1589(a) set forth in plaintiff's first cause of action, these allegations are more than sufficient to state claims under Section 1592(a).").

Additionally, even if there were a predicate violation, these claims must be dismissed due to insufficient factual support. By their terms, it is unlawful under Sections 1592 and 1597 for someone to "knowingly destroy, conceal, remove, confiscate, or possess, an actual or purported passport or other immigration document . . . ." Here, Mr. Mallela doesn't plead that Cogent took his passport or any other official document. Rather, as alleged, it appears that Mr. Mallela is complaining that Cogent *didn't* take his passport or immigration documents. Cogent seemingly sat on its hands and did nothing to help him process a green-card application. Those facts are insufficient to state viable claims under the plain terms of these statutes.

**C.    The complaint will be dismissed without prejudice.**

The decision to permit amendment of pleadings "generally falls within the [d]istrict [c]ourt's discretion," and a plaintiff should be allowed to amend his pleadings unless there is a finding of "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; [or] futility." *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017) (citations omitted). The Court finds that none of those issues are present.

Accordingly, the IIED, NIED, and Trafficking Act claims will be dismissed without prejudice.  Mr. Mallela must file an amended complaint, if he so wishes, by **June 1, 2020**.  In light of this opinion and the Court's meet-and-confer requirements for all motions to dismiss, no additional curative amendments will be authorized as to the above claims.

## <u>CONCLUSION</u>

For all the reasons discussed above, Cogent's motion to dismiss [ECF 7] is **GRANTED.**  Counts I, IV, and V of the Complaint are dismissed without prejudice.  An appropriate order follows.

DATED this 19th day of May, 2020.


BY THE COURT:


*/s/ J. Nicholas Ranjan*
United States District Judge

- 14 -